**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

LESTER LEE SCARBROUGH, JR.,

                      Plaintiff,

    v.                                                    No. 11-CV-131
                                                       (NAM/DRH)

JEFFREY EVANS, OMH Social Worker,
Upstate Correctional Facility; NANCY SMITH,
Nurse Administrator, Upstate Correctional
Facility; and BEZALEL WURZBERGER, MD
Psych III, Upstate Correctional Facility,

                      Defendants.

---

**APPEARANCES:**                                   **OF COUNSEL:**

LESTER LEE SCARBROUGH, JR.
Plaintiff Pro Se
08-B-0351
Upstate Correctional Facility
Post Office Box 2001
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN         ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of        Assistant Attorney General
   New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Lester Lee Scarbrough, Jr.("Scarbrough"), an inmate in the custody of

the New York State Department of Corrections and Community Supervision (DOCCS),

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

brought this action against three DOCCS employees[2] at the Upstate Correctional Facility alleging violations of his Eighth Amendment rights. Compl. (Dkt. No. 1). Defendants have moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. Nos. 21, 27. Scarbrough opposes the motion. Dkt. Nos. 26, 31. For the reasons which follow, it is recommended that defendants' motion be granted and it is ordered that Scarbrough be granted leave to file an amended complaint.

## I. Background

The facts are related herein in the light most favorable to Scarbrough as the non-moving party. See subsection II(A) infra.

At all times relevant here, Scarbrough was confined at Upstate in a Special Housing Unit (SHU).[3] Compl. at ¶ 15. As best can be discerned from the complaint, Scarbrough suffered from a variety of mental conditions, including Attention Deficit Disorder (ADD), Attention Deficit Hyperactivity Disorder (ADHD), and hallucinations. Id. at ¶ 22. Scarbrough had been treated for mental conditions, as well as numerous physical afflictions, since

---

[2] The complaint was previously dismissed as to five other defendants. Dkt. No. 8.

[3] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301. Scarbrough was held in a double-occupancy cell. Compl. at ¶ 15. "Upstate is a maximum security prison comprised exclusively of special housing unit ('SHU') cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day." Caldwell v. Gertmann, No. 9:09-CV-580 (DNH/DEP), 2012 WL 1119869, at *1 n.3 (N.D.N.Y. Mar. 2, 2012) (citation omitted).

childhood.  Id. at ¶¶ 16, 18, 19, 23, 46-50

Defendants administered medications to Scarbrough for his mental conditions which caused certain adverse side effects.  Compl. at ¶ 19.  Defendants failed to research Scarbrough's medical history back to treatment he received in childhood and, if they had, defendants would have known not to administer such medication to Scarbrough.  Id. at ¶¶ 16-18, 47, 50.  The adverse side effects included suicidal ideations, rapid heart beat, fits of anger, and lapses of memory.  Id. at ¶ 19.  Defendants placed Scarbrough in a double cell with dangerous inmates rather than alone in a single cell, which led cellmates to assault Scarbrough when he exhibited the psychotic side effects of his medication.  Id. at ¶¶ 22, 31, 42.  Scarborough further states that in 2009 and 2010, unidentified officials used excessive force against him when they extracted Scarbrough from his cell.  Id. at ¶¶ 24, 29-30, 35.  This action followed.

## II. Discussion

Scarborough asserts three causes of action in his complaint.  The first alleges that defendants deprived Scarbrough of his Eighth Amendment right to be free from cruel and unusual punishment when they administered medications for his mental condition without researching his treatment history and exacerbating his condition.  Compl. at ¶ 53.  The second alleges that defendants were deliberately indifferent to Scarbrough's serious medical needs in violation of the Eighth Amendment when they placed him in a cell with violent inmates who assaulted Scarbrough when Scarbrough displayed symptoms of his mental condition.  Id. at ¶ 54.  The third alleges that defendant Jeffrey Smith and another DOCCS employee denied Scarbrough food during the 3:00-11:00 shift on a day when

Scarbrough was confined to the infirmary in violation of the Eighth Amendment. Id. at ¶ 55. In addition, liberally construing the complaint and considering all possible claims which its allegations could conceivably support, Scarbrough may be deemed to have alleged claims for (1) defendants' failure to protect Scarbrough from assaults by other inmates, see id. at ¶22, 31, 42, 54; (2) retaliation in violation of the First Amendment for terminating treatment of Scarbrough's mental condition after he complained about the medications he was administered, see id. at ¶20; and (3) the use of excessive force by corrections officers when they forcibly extracted Scarbrough from his cell on or about December 31, 2009, see id. at ¶ 24.

The three remaining defendants seek dismissal of the medical care claims explicitly asserted by Scarbrough on the grounds that they fail to state claims, defendants are entitled to qualified immunity, and the Eleventh Amendment bars recovery against the defendants in their official capacities. Defs. Mem. of Law (Dkt. No. 21-1) at 4-13.

### A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994). However, this "tenet ... is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action ... [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility ... that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement ... it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir.2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible ....") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 680.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they 'suggest. . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . or arguments that the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by pro se litigants" . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant # 1, 537

F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.' " (citations omitted)).

### B. Scarbrough's Claims
### 1. Deliberate Indifference to Medical Needs

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare', a prisoner must first make [a] threshold showing of serious illness or injury" to

6

state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104, (1976).

> Thus, disagreements over medications, diagnostic techniques (e.g., the need for x-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence, amounting to medical malpractice, but not the Eighth Amendment.

Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (citing Estelle, 429 U.S. at 107); see also Chance, 143 F.3d at 703 (holding that "[m]ere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness.

7

Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

### a. Medication

In his first cause of action, Scarbrough alleges that defendants, not identified by name, administered medication "[without] checking out his documented mental health (childhood) history in which psychiatric medication had an adverse effect on plaintiff's mental health by temporarily worsening his condition . . . ." Compl. at ¶ 53. Assuming Scarbrough's allegations to be true, the failure to investigate a patient's medical history may constitute negligence or carelessness, but it does not rise to the level of deliberate indifference . See Key v. Brewington-Carr, No. Civ.A. 98-152-GMS, 2000 WL 1346688, at *20 (D. Del. Sept. 6, 2000) (citing Ruvalcaba v. City of Los Angeles, 167 F.3d 514, 525 (9th Cir. 1999) (explaining that the failure to take a full medical history which led to a misdiagnosis was only negligent) and Steele v. Choi,, 82 F.3d 175, 179 (7th Cir. 1996) (holding that although careless, a failure to investigate all of the possible causes of a patient's symptoms amounted only to negligence)). As to the adverse effects of medication, the mere fact that the medication failed to have its intended effect or that Scarbrough questioned or disagreed with the particular medication is also insufficient to state a claim for deliberate indifference. See Demata v. New York State Correctional Dep't of Health Servs., 198 F.3d 233, *3 (2d Cir. 1999); Chance, 143 F.3d at 702  Accordingly, defendants' motion as to this claim should be granted.

### b. Double Cell

In his second cause of action, Scarbrough alleges that defendants, again unnamed, were deliberately indifferent to his mental condition when they placed him a double cell with violent inmates who assaulted Scarbrough when he exhibited the symptoms of his mental condition.  Compl. at ¶ 54.  As noted, a claim of deliberate indifference must by supported by evidence that the defendant was aware of a risk to the inmate's health and disregarded that risk.  See Chance, 143 F.3d at 702.  Here, Scarbrough has failed to allege facts from which it could be found that any defendant was aware that Scarbrough was at risk of assault by other inmates, that Scarbrough would display conduct reasonably likely to incite his cellmate to assault him, or that the medication and treatment administered to Scarbrough would cause Scarbrough to act in a way which reasonably would cause his cellmate to assault him.  Accordingly, defendants' motion as to this claim should also be granted.

### c. Denial of Food

In his third cause of action, Scarbrough alleges that defendant Smith and another DOCCS employee deprived Scarbrough of a meal during the 3:00-11:00 shift while Scarbrough was confined to the infirmary.  Compl. at ¶ 55.  Assuming this allegation to be true for purposes of this motion, the denial of a single meal is insufficient to state a claim for relief.  See Kearney v. Goord, No. 09–CV–679, 2011 WL 1260076, at *6 (W.D.N.Y. March 4, 2011) (holding that the denial of several meals is de minimis ); Lunney v. Brureton, No. 04–CV–2438, 2007 WL 1544629. at *21 (S.D.N.Y. May 29, 2007) (holding that isolated or

sporadic denial of privileges such as recreation do not suffice to state a claim of actionable retaliation, while routine denial of showers and recreation survived a motion to dismiss retaliation claim) (Report–Recommendation), adopted by 2007 WL 2050301 (S.D.N.Y. July 18, 2007)). Therefore, defendants' motion as to this claim against defendant Smith should also be granted.

## 2. Failure to Protect

As noted, Scarbrough's complaint contains allegations which, liberally construed, could support other causes of action not explicitly pleaded in his complaint. A pro se action should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim may be asserted. Parrino v. Sun Gard Availability Services, L.P., No. CV 11–3315, 2012 WL 826946, at *4 (E.D.N.Y. Feb. 16, 2012) (citing Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir.1999)); Wilson v. Woodbourne Correctional Facility, No. 9:11–CV–1088 (DNH/ATB), 2012 WL 1377615, at *6 (N.D.N.Y. Mar. 21, 2012).

The first of those unpleaded claims asserts that unnamed defendants placed Scarbrough in a double cell with unnamed violent inmates who assaulted Scarbrough. Compl. at ¶¶ 22, 31, 42, 54; see also Farmer v. Brennan, 511 U.S. 825, 828 (1994). It is unclear from the complaint which individuals Scarbrough contends were responsible for his placement in a double cell, whether those individuals possessed knowledge that Scarbrough was at risk of assault, or if and when any such individuals ignored such a risk. Accordingly, Scarbrough should be afforded an opportunity to amend his complaint to plead such a cause of action.

### 3. Retaliation

Scarbrough's second unpleaded cause of action appears to assert that unnamed defendants terminated Scarbrough's medical treatment when he complained about that treatment in violation of Scarbrough's First Amendment right to seek the redress of grievances. Compl. at ¶ 20 (alleging that DOCCS employees "remov[ed] plaintiff from the OMH case load after his complaints of adverse effects, and discontinu[ed] treatment altogether, 7-17-2009 . . . ."). A claim of retaliation requires sufficient allegations that an inmate engaged in activity protected by the First Amendment, such as making complaints or filing grievances, and that such protected activity was a substantial or motivating factor in the decision of named defendants to terminate medical treatment. See Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003). Scarbrough should be afforded an opportunity to amend his complaint to plead such a cause of action.

### 4. Excessive Force

Finally, Scarbrough alleges that unnamed individuals used excessive and unreasonable force against him when they forcibly extracted him from his cell on or about December 31, 2009. Compl. at ¶ 24. The use of excessive force against an inmate is barred by the Eighth Amendment prohibition against cruel and unusual punishment. See Hudson, 503 U.S. at 7; Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) ("The test of whether use of force in prison constitutes excessive force contrary to the Eighth Amendment is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."). Scarbrough should be afforded

an opportunity to amend his complaint to plead such a cause of action.

### C. Qualified Immunity

As to the medical care claims, defendants also seek dismissal in the alternative on the ground of qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights . . . immunity might still be available as a bar to . . . suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir.1991) (citations omitted).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached as to Scarbrough's medical care claims because, as discussed supra, accepting all of Scarbrough's allegations as true, he has not shown that any of these defendants violated his constitutional rights.

12

Accordingly, defendants' motion on this ground should be granted in the alternative as to all three defendants on Scarbrough's medical care claims.

### D. Eleventh Amendment

It appears that Scarbrough has sued the defendants in both their individual and official capacities.  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)).  Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.  Halderman, 465 U.S. at 100.  Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official.  Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)).  "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even

13

though asserted against the individual officer. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Here, Scarbrough seeks monetary damages against defendants in their official capacity for acts occurring within the scope of their duties. Thus, the Eleventh Amendment bar applies and serves to prohibit Scarbrough's claim for monetary damages against defendants in their official capacities.

Accordingly, it is recommended in the alternative that defendants' motion be granted on this ground.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 21) be **GRANTED** as to all three remaining defendants and the three Eighth Amendment health care claims asserted in Scarbrough's complaint; and

**IT IS ORDERED** that within thirty days of the filing of a decision by the district court on this report-recommendation, Scarbrough is granted leave to file an amended complaint asserting claims for (1) failure to protect in violation of the Eighth Amendment, (2) retaliation in violation of the First Amendment, and (3) the use of excessive force in violation of the Eighth Amendment.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

DATED: May 17, 2012
         Albany, New York

_____
United States Magistrate Judge